## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KHALED S. SAWAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-1550 |
| | § | |
| MICHAEL CHERTOFF, *Secretary of the* | § | |
| *Department of Homeland Security*, *et al.,* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Khaled S. Sawan, a lawful permanent resident since 2002 based on his marriage to a United States citizen, has filed a complaint "to compel action on the delayed processing of an N-400 Application for Naturalization."  Sawan asserts federal subject-matter jurisdiction under the Mandamus Act, 5 U.S.C. § 1361, the presence of a federal and constitutional question under 28 U.S.C. § 1331 and the Fifth Amendment; the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 701 *et seq.*; and the Declaratory Judgment Act, 28 U.S.C. § 2201. The respondents have filed a motion to dismiss for lack of subject-matter jurisdiction. (Docket Entry No. 9).  Sawan has filed a response.  (Docket Entry No. 10).  Based on a careful review of the pleadings, the submissions, and the applicable law, the court grants the respondents' motion and dismisses this case.  The reasons are set out in detail below.

## I.    Background

Sawan alleges that in November 2006, he filed an N-400 Application for Naturalization with the United States Bureau of Citizenship and Immigration Services ("USCIS").  He made numerous subsequent inquiries.  Each inquiry was met with the response that adjudication of his naturalization application was delayed pending the completion of the FBI background "name" check.  Sawan alleges that he requested expedited handling because his mother is ill and abroad and he wants to petition for her to join him in the United States.  Sawan asserts that other naturalization applications filed after his are being processed.  No interview has been scheduled.  To date, Sawan's FBI name check has not been completed.

Sawan seeks a declaration that the failure to act on his application is "illegal, arbitrary, capricious, and abuse of discretion" and that the delay is unreasonable; an order that the defendants Mukasey and Mueller "take all reasonable steps to complete processing of plaintiff's FBI name check within a reasonable time period not to exceed 30 days from the date of the Court's order"; and an injunction to prevent the defendants employed by the Department of Homeland Security from requiring FBI name check for adjudication of Plaintiff's application" and an order that they "perform their duty to finally adjudicate Plaintiff's application for naturalization within a reasonable time not to exceed 60 days from the date of the Court's order."  (Docket Entry No. 1, p. 21).

The respondents have filed a motion to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure "because the

process involved in determining Plaintiff's application must include completion of the background check.  *See* 8 U.S.C. § 1446(a); 8 C.F.R. 335.2(b)."  (Docket Entry No. 9).

## II.     Subject-Matter Jurisdiction

### A.     The Applicable Standard

 "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Krim v. pcOrder.com, Inc*., 402 F.3d 489, 494 (5th Cir.2005) (citations omitted).  In determining whether subject-matter jurisdiction exists, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  *Id*.  The petitioner bears the burden of demonstrating that jurisdiction is proper.  *See Lara v. Trominski*, 216 F.3d 487, 491 (5th Cir.2000) (citing *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998)).

### B.     The Naturalization Process

An alien seeking citizenship through naturalization must strictly comply with all congressionally imposed prerequisites to citizenship.  *See INS v. Pangilinan*, 486 U.S. 875, 884, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988); *Fedorenko v. United States*, 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981).  Any doubts about eligibility for naturalization must be resolved in favor of the government and against the applicant.  *See Berenyi*, 385 U.S. at 637.

Under the Immigration and Nationality Act ("INA") and the governing regulations, "[n]o person . . . shall be naturalized" unless the following criteria are met:

> (1)  immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . .;
>
> (2)  has resided continuously within the United States from the date of the application up to the time of admission to citizenship; and
>
> (3)  during all the periods referred to in this subsection has been and still is a person of good moral character. . . .

8 U.S.C. § 1427(a). Subject to certain exceptions, an applicant must demonstrate an understanding of the English language, including the ability to read, write, and speak words in ordinary usage.  8 U.S.C. § 1423(a)(1).  An applicant must also demonstrate a knowledge and understanding of the fundamentals of United States history, and of the principles and form of the United States government.  8 U.S.C. § 1423(a)(2).  And Congress has mandated background checks of each applicant.  *See* Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448, set forth in the historical and statutory notes to 8 U.S.C. § 1446.

An applicant for citizenship through naturalization must submit a completed Form N-400 Application for Naturalization to the USCIS.  *See* 8 C.F.R. § 334.2 (2006). Once an application for naturalization is filed, the USCIS "shall conduct an investigation of the applicant."  8 C.F.R. § 335.1.  Once that investigation is completed, each applicant must appear in person before a USCIS officer designated to conduct "examinations" under 8 C.F.R. § 335.1.  Before this meeting, designated by the regulations an "initial examination," the regulations require that a criminal background check be completed by the FBI.  *See* 8 C.F.R. § 335.2(b).  The "examination" includes questioning by the officer about matters the

applicant has included in the written submissions, in addition to tests on English literacy and basic knowledge of the history and government of the United States.  8 C.F.R. § 335.2(c). "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2."  8 C.F.R. § 335.3(a).

The specific delay at issue in this case is in the FBI's completion of the petitioner's name check.  Nearly two years have passed since Sawan filed his application.  According to an affidavit from Michael A. Cannon, who has been Chief of the National Name Check Program Section for the FBI in Washington, D.C. since 2005, Sawan's name check remains pending but its processing has been delayed because of the high volume of such requests the FBI receives. (Docket Entry No. 9, Attachment 4, Cannon Declaration).   Cannon's declaration explains the process involved in completing a name check and the volume of such requests.  Cannon confirms that the FBI will complete the name check in accordance with the procedures in place and that the results will be forwarded to USCIS "in due course, in accordance with the FBI's normal protocol."  (*Id*. at ¶ 43.)

## C.    Analysis

Swan seeks a writ of mandamus under 28 U.S.C. § 1361 to compel the FBI to complete the requisite name check and to compel immigration officials to adjudicate his pending naturalization application.  Citing the lengthy delays in processing his name check and naturalization application, Sawan also invokes the Administrative Procedure Act, 5

U.S.C. § 706(1), as a potential statutory source for federal-question jurisdiction under 28 U.S.C. § 1331.

The federal mandamus statute provides that district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The writ of mandamus is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'"  *Cheney v. United States Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (quoting *Ex parte Fahey,* 332 U.S. 258, 259-60, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947)); *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir.1969) ("It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases."), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970).  To obtain a writ of mandamus, a plaintiff must establish "(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy."  *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir.1998) (citing *In re Stone*, 118 F.3d 1032, 1034 (5th Cir.1997)).  Mandamus is an extraordinary remedy; the petitioner carries the burden of showing that his right to issuance of the writ is "clear and indisputable."  *Miller v. French*, 530 U.S. 327, 339, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000).

Sawan cannot show that judicial review is available under the mandamus statute because he does not establish a clear right to relief.  The applicable statute contains no specific time period for the FBI to complete its name check investigation.  While the respondents have a clear duty to process Sawan's application, which includes the mandatory name check

6

investigation, Sawan has not established a clear right to have the application adjudicated within a particular time. *See Badier v. Gonzales*, 475 F.Supp.2d 1294 (N.D. Ga.2006) (finding no clear right to relief and therefore no jurisdiction under 28 U.S.C. § 1361 for delays in completing a naturalization applicant's FBI name check). There is no evidence in the record of any agency refusal to conduct the name check investigation. Rather, the evidence shows that Sawan's name check is pending along with a high volume of other requests and will be completed subject to workload and national security needs. There is no evidence that the process is unavailable or that there is no other adequate remedy. *See Chaudry v. Chertoff*, 2006 WL 2670051, *2 (D. Minn. 2006). Delays in administrative processing do not alone make the process inadequate or unavailable and do not warrant mandamus. *See Yan v. Mueller*, 2007 WL 1521732, *6 (S.D. Tex. 2007); *Attias v. Chertoff*, 2006 WL 1738377, *2 (E.D. Mo. June 22, 2006).

Courts have held that the pace at which immigration applications are processed is not subject to judicial review under the federal mandamus statute. *See Yan v. Mueller,* 2007 WL 1521732, *6; *Grinberg v. Swacina*, 478 F.Supp.2d 1350, 1355-56 (S.D. Fla.2007); *Safadi v. Howard*, 466 F.Supp.2d 696, 701 (E.D. Va.2006). Sawan cites 8 U.S.C. § 1446, which instructs immigration officials to adjudicate naturalization applications within 120 days, in arguing that the duty to proceed on his application is not discretionary and can be compelled. But the USCIS has processed Sawan's application in a timely manner and is simply waiting on the results of the FBI's mandatory name check investigation. The name check investigation has been delayed by the volume of name check requests received by the FBI and

the demands on that agency for background investigations, including for criminal investigations and other security clearances. Congress has not imposed a deadline for the FBI to complete the name check investigations. Congress has required the completion of such investigations before a naturalization application may be processed. *See Mustafa,* 2006 WL 488399, *5 (noting that the USCIS does not have authority to expedite the FBI's investigation or to give petitioner priority over other background checks requested by other agencies and that "delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world") (*quoting Alkenani v. Barrows*, 356 F.Supp.2d 652, 656 (N.D. Tex. 2005)). And as other courts have noted, granting review on the grounds urged here "would only serve to further divert agency attention and stretch scarce resources away from the adjudication of naturalization applications by encouraging other applicants to file suit to receive expedited treatment rather than wait their turn in line." *Yan v. Mueller*, 2007 WL 1521732, *8; *see also Manzoor v. Chertoff*, 472 F.Supp.2d 801, 809 (E.D. Va. 2007) (declining to grant relief in a case involving a delayed name check to avoid providing "an incentive for naturalization applicants to file civil actions in an effort to . . . 'jump to the front of the line'"); *Qui v. Chertoff,* 486 F.Supp.2d 412, 2007 WL 1430207, *6 (D.N.J.2007) (declining to grant review where doing so "would do nothing more than shuffle to the front of the line those . . . applicants canny enough to file a complaint in federal court"); *Liu v. Chertoff*, 2007 WL 1300127, *5 (S.D. Cal. April 30, 2007) (observing that "[t]he federal courts have recently become inundated with naturalization actions seeking declaratory relief" from delayed FBI name checks).

Because the record shows that the FBI and USCIS continue to make reasonable efforts to complete the adjudication, the time required to complete that process is committed to the agency's discretion and cannot be subject to review by mandamus under 28 U.S.C. § 1361. *See Yan*, 2007 WL 1521732, \*8; *Grinberg*, 478 F.Supp.2d at 1355-56; *Safadi*, 466 F.Supp.2d at 701; *Liu*, 2007 WL 1300127, \*5 (citations omitted); *Mustafa*, 2006 WL 488399, \*5.

Nor does the APA provide a basis for subject-matter jurisdiction.  Section 706(1) of the APA can provide jurisdiction "to compel agency action" that is "unreasonably delayed or withheld."  5 U.S.C. § 706(1).  For a federal district court to take action under 5 U.S.C. § 706(1), a petitioner must demonstrate that an administrative agency "has failed to take a discrete action that it was required to take."  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004).  Because both the APA and the Federal Mandamus statute offer similar means of compelling an agency to take action that it is required to take, claims made under either statute are subject to the same standard.  *See Hernandez-Avalos v. INS,* 50 F.3d 842, 844-45 (10th Cir.) (citing *Giddings v. Chandler,* 979 F.2d 1104, 1108, 1110 (5th Cir.1992)), *cert. denied*, 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 49 (1995).  The APA fails to qualify as a basis for subject-matter jurisdiction for the same reasons that the federal mandamus status failed to do so.  *See Grindberg*, 478 F.Supp.2d at 1354-55.

As other courts have noted, complaints such as Sawan's over the slow pace of naturalization applications are numerous and reflect a genuine problem.  The appropriate remedy, however, is not from the courts.  The facts that Sawan alleges do not distinguish his

9

application or his name check request from those of many other applicants.  Sawan alleges no improper motive for the delay on the part of the FBI or other agency.  The source of the delay is the volume of applicants and background investigations.  As the Supreme Court has observed, the "wholesale improvement" of an agency's program cannot be accomplished by court decree, as opposed to offices of the agency or department or the "halls of Congress, where programmatic improvements are normally made."  *Norton*, 542 U.S. at 64.  The record shows that the FBI is attempting to improve the name-check investigation process and make it speedier.  *See* Cannon Declaration, Docket Entry No. 9, ¶¶ 30-39.  Further improvements should come from the affected agencies and from Congress.  The need for further improvements does not create subject-matter jurisdiction.

## III.    Conclusion and Order

The respondents' motion to dismiss for lack of subject-matter jurisdiction is granted. This case is dismissed without prejudice.

SIGNED on August 14, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

10