# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| KHALED S. SAWAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-1550 |
| | § | |
| MICHAEL CHERTOFF, *Secretary of the* | § | |
| *Department of Homeland Security, et al.,* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The plaintiff, Khaled S. Sawan, has been a lawful permanent resident since 2002 based on his marriage to a United States citizen. Sawan filed this suit to compel action on his N-400 Application for Naturalization ("Form N-400"), which has been pending since November 2006. On August 14, 2008, this court granted the defendants' motion to dismiss for lack of subject-matter jurisdiction. Sawan moved for reconsideration, (Docket Entry No. 13), which the defendants opposed, (Docket Entry No. 14). For the reasons explained below, this court grants Sawan's motion for reconsideration in part, finding subject-matter jurisdiction. Although some of Sawan's claims are dismissed for failure to state a cause of action, others withstand dismissal on this basis. Because the parties have submitted materials outside the pleadings, the motion to dismiss is converted to one for summary judgment. The defendants may supplement the record and briefing no later than December 1, 2008. Sawan may respond and supplement the record and briefing no later than December 15, 2008.

The reasons for these rulings are explained below.

## I.    Background

### A.    The Naturalization Process

The process for examining and investigating an applicant for naturalization is prescribed in 8 U.S.C. § 1446 and the regulations promulgated under that statute.  The naturalization process begins when a noncitizen files a Form N-400 with the USCIS.  *See* 8 C.F.R. § 334.2(a).  The USCIS must then "conduct an investigation of the applicant."  8 C.F.R. § 335.1.  The applicant must also "appear in person before a [USCIS] officer" for an "examination," an in-person interview.  8 C.F.R. § 335.2(a); *see also Walji v. Gonzales*, 500 F.3d 432, 435 & n.5 (5th Cir. 2007) (observing that most courts have held that an "examination" under 8 U.S.C. § 1447(b) is "a discrete event – the agency's initial interview of the applicant").  The USCIS must grant or deny the application within 120 days of the interview.  8 U.S.C. § 1447(b); 8 C.F.R. § 335.3(a).  The interview may be scheduled "*only after* the [USCIS] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b) (emphasis added).  This regulation was promulgated to give effect to two statutes: 8 U.S.C. § 1446(a), which provides that "[b]efore a person may be naturalized, an employee of the [USCIS], or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization"; and the 1998

Appropriations Act,[1] which provides that "none of the funds appropriated or otherwise made available to [the USCIS] shall be used to complete adjudication of an application for naturalization unless [the USCIS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed."

Under the USCIS's practice since November 2002, one part of the FBI background check is a "name check."[2] *Ahmadi v. Chertoff*, No. C 07-03455, 2007 WL 3022573, at *8 (N.D. Cal. Oct. 15, 2007). Only after the FBI background check – including the name check – is complete does the process continue to the next required steps: the USCIS's interview of the applicant and adjudication of the application on the merits.

There is no explicit statutory or regulatory requirement that a naturalization application be adjudicated within a particular period after filing. There is an explicit requirement that once the interview is held – which under the regulation is not to occur until the name check is complete – the final decision on the application must issue within 120 days. 8 U.S.C. § 1447(b); 8 C.F.R. § 335.3. There are other limits on the time for processing naturalization applications. Title 8 U.S.C. § 1571(b) states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180

---

[1]   Depts. of Commerce, Justice & State, The Judiciary & Related Agencies Appropriations Act of 1998, Pub. L. 105-119, Stat. 2440-2448-49 (1997) (8 U.S.C. § 1448 note).

[2]  An FBI fingerprint check is also required as part of the criminal background check. *See Gadi v. Chertoff*, No. CV-F-07-090, 2007 WL 1140825, at **2-3 (E.D. Cal. Apr. 17, 2007).

days after the initial filing of the application." 8 U.S.C. § 1571(b).  Section 103.2(b)(18) of

the regulations states that if a naturalization application has not been adjudicated within one

year after filing, USCIS officials must review the application at six-month intervals to

determine whether withholding decision is appropriate.[3]  8 U.S.C. § 103.2(b)(18).  The

USCIS is required to decide each application; there is no discretion to decide. *See*

---

[3]  The full text of 8 C.F.R. 103.2(b)(18) states:

> Withholding adjudication:  A district director may authorize
> withholding adjudication of a visa petition or other application
> if the district director determines that an investigation has been
> undertaken involving a matter relating to eligibility or the
> exercise of discretion, where applicable, in connection with the
> application or petition, and that the disclosure of information to
> the applicant or petitioner in connection with the adjudication of
> the application or petition would prejudice the ongoing
> investigation. If an investigation has been undertaken and has
> not been completed within one year of its inception, the district
> director shall review the matter and determine whether
> adjudication of the petition or application should be held in
> abeyance for six months or until the investigation is completed,
> whichever comes sooner.  If, after six months of the district
> director's determination, the investigation has not been
> completed, the matter shall be reviewed again by the district
> director and, if he/she concludes that more time is needed to
> complete the investigation, adjudication may be held in
> abeyance for up to another six months.  If the investigation is
> not completed at the end of that time, the matter shall be referred
> to the regional commissioner, who may authorize that
> adjudication be held in abeyance for another six months.
> Thereafter, if the Associate Commissioner, Examinations, with
> the concurrence of the Associate Commissioner, Enforcement,
> determines it is necessary to continue to withhold adjudication
> pending completion of the investigation, he/she shall review that
> determination every six months.

8 U.S.C. § 1446(d) (the USCIS "shall make a determination as to whether the application should be granted or denied, with reasons therefor."); 8 C.F.R. § 316.14(b)(1) (the USCIS "shall determine whether to grant or deny the application, and shall provide reasons for the determination . . . ."). Action is also required under the Administrative Procedures Act ("APA"), which states that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA gives federal district courts the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The USCIS name-check requirement "has become a bottleneck because the FBI has large numbers of pending name-check requests and limited resources to complete them." *Ali v. Frazier*, 575 F. Supp. 2d 1084, 2008 WL 4180265, at *1 (D. Minn. Sept. 11, 2008). This case is one of many filed around the country to challenge the delays in adjudicating naturalization applications resulting from delays in name-check processing.

### B. Sawan's Claims

In November 2006, Sawan applied to become a naturalized citizen of the United States. He alleges that he meets the eligibility criteria. Sawan has not been interviewed because, according to the USCIS, his FBI name check has not been completed. Sawan alleges that his requests for expedited treatment, based primarily on the fact that his mother is ill and abroad and he wants to petition for her to join him in the United States, went

5

unanswered.  He alleges that other naturalization applications filed after his have already been adjudicated.

In this suit, Sawan asks this court to order the USCIS and the FBI to take all reasonable steps to complete processing his name check within 30 days and to complete adjudicating his naturalization application within 60 days.  Sawan sued USCIS officials and the FBI director under the Mandamus Act, 28 U.S.C. § 1361, the APA, 5 U.S.C. §§ 555(b), 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201.   In this motion for reconsideration of the dismissal for lack of subject-matter jurisdiction, Sawan asserts that the court has subject-matter jurisdiction over his claims for unreasonable delay against the USCIS and the FBI.  Sawan also argues that the court failed to consider his argument that the USCIS has no statutory or regulatory authority to require a name check as a condition to scheduling an interview.  (Docket Entry No. 13).  The defendants have responded, arguing that Sawan has failed to show a clear right to relief and that this court therefore lacks subject-matter jurisdiction to consider his claims.  (Docket Entry No. 14).

Each argument and response is considered below.

## II.    Whether This Court Has Subject-Matter Jurisdiction over Sawan's Claims

In the motion to dismiss, the defendants argued that this court lacked subject-matter jurisdiction over Sawan's claims under the Mandamus Act, 28 U.S.C. § 1361; the APA, 5 U.S.C. §§ 555(b), 706 *et seq*.; and the Declaratory Judgment Act, 28 U.S.C. § 2201.  On reconsideration, this court concludes that dismissal for lack of subject-matter jurisdiction was appropriate as to the claims under the Declaratory Judgment Act.  "The Declaratory

6

Judgment Act . . . is a procedural statute and not a jurisdictional one.  As such, it does not provide an independent basis for federal court review."  *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *2 n. 4 (S.D. Tex. May 24, 2007) (dismissing Declaratory Judgment Act as basis for subject-matter jurisdiction in naturalization case claiming undue delay due to name check requirement).   But dismissal for lack of subject-matter jurisdiction was not appropriate for the Mandamus Act and APA claims.

The Mandamus Act gives federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff."  28 U.S.C. § 1361.  The APA states that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).  The APA also states that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1).  The APA does not provide an independent basis for subject-matter jurisdiction, but a district court may have subject-matter jurisdiction over APA claims under the federal-question statute, 28 U.S.C. § 1331, which states that federal district courts "have original jurisdiction of any civil actions arising under the Constitution, laws, or treaties of the United States."

Mandamus relief is available only if a plaintiff establishes "(1) a clear right to relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy."  *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998).  A plaintiff must make a similar showing to be granted injunctive relief under the APA.  *See*

*Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995) (describing the APA and the Mandamus Act as "merely different means of compelling an agency to take action which by law it is required to take") (citation omitted); *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *8 (S.D. Tex. May 24, 2007) ("Because both statutes offer similar means of compelling an agency to take action which by law it is required to take, claims made under this provision of the APA and the federal mandamus statute are subject to the same standard."); *Dawoud v. Dep't of Homeland Sec.*, No. 3:06-cv-1730, 2007 WL 4547863, at *8 (N.D. Tex. Dec. 26, 2007) (same).

In its motion to dismiss, and again in its opposition to Sawan's motion for reconsideration, the defendants argued that a federal district court has no subject-matter jurisdiction over a claim that action on a naturalization application must be compelled because the name-check requirement has resulted in unreasonable delay. The defendants argued that the USCIS "has no non-discretionary duty to immediately process the Plaintiff's naturalization application prior to the favorable completion of all mandatory background checks," (Docket Entry No. 9 at 6), and that "[t]here is no applicable time frame which [Sawan] can identify that requires USCIS to act on his application for naturalization," (Docket Entry No. 14 at 3). The argument that there is no nondiscretionary duty to act on a naturalization application within a certain time is an argument that Sawan is not entitled to the relief he seeks. "But whether a plaintiff is *entitled to relief* is a separate question from whether a court has jurisdiction to *decide* whether a plaintiff is entitled to relief." *Ali v.*

*Frazier*, 2008 WL 4180265, at *3 (emphasis in original).  The defendants, and this court, did not give sufficient recognition to this distinction.

Many cases deciding claims similar to Sawan's, challenging delays in processing naturalization applications due to delays in completing name checks, treat subject-matter jurisdiction as coextensive with whether the plaintiff has stated a claim upon which relief can be granted.  These cases hold that judicial review is not available under the mandamus statute or the APA because the plaintiff cannot establish a clear right to relief.  *See, e.g., Hussain v. Mueller*,  No. H-07-cv-2755, 2008 WL 2557565, at *3 (S.D. Tex. June 20, 2008) (finding lack of subject-matter jurisdiction because plaintiff, a candidate for naturalization who had not been interviewed by the USCIS and whose application had been stalled for over two years in the name-check phase, had not established that the USCIS and FBI had a clear duty to adjudicate his application within a particular time).[4]  Other cases considering the same question have concluded that subject-matter jurisdiction is present because the plaintiff has shown a clear right to relief.  In *Abdi v. Chertoff*, No. 6:08-cv-292, 2008 WL 4371351, at **4-7 (M.D. Fla. Sept. 22, 2008), for example, the court found subject-matter jurisdiction after concluding that under 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3(a), the USCIS has a duty

---

[4]  Other cases dismissing for lack of subject-matter jurisdiction after concluding that the plaintiff could not state a clear right to relief include *Diini v. Hansen,* 2:08-cv-0357, 2008 WL 4758686, at **2-4 (S.D. Ohio Oct. 27, 2008); *Hussain v. Mueller,* No. H-07-cv-2755, 2008 WL 2557565, at *3 (S.D. Tex. June 20, 2008); *Mighri v. Gonzales*, No. 07-cv-3624, 2007 WL 4463590, at **2-5 (E.D. Pa. Dec. 19, 2007); *Kuchmov v. Chertoff*, No. 07-12277, 2007 WL 2782045, at **3-4 (E.D. Mich. Sept. 24, 2007); *Ahmed v. Mueller*, No. 07-0411, 2007 WL 2726250, at **4-6 (E.D. Pa. Sept. 14, 2007); *Ibrahim v. Chertoff*, 529 F. Supp. 2d 611, 614 (E.D.N.C. 2007); *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007); *Safadi v. Howard*, 466 F. Supp. 2d 696, 700-01 (E.D. Va. 2006).

to act and the plaintiff had a clear right to relief.[5]  Yet other cases conclude that the district

court has subject-matter jurisdiction to consider the plaintiff's claims for relief under the

APA or mandamus statute, even if the plaintiff cannot show a clear right to relief under those

claims.  In *Ali v. Frazier*, the district court explained that subject-matter jurisdiction did not

depend on finding a clear right to relief at the pleading stage:

> The government's entire argument . . . addresse[s] the *merits* of
> Al-Selham's claims.  In that argument, the government provided
> no support whatsoever for the proposition that the Court lacks
> *jurisdiction* over those claims. . . .  Whether the government has
> a clear duty to Al-Selham that is enforceable by way of
> mandamus or under the APA is a separate issue that goes to the
> merits of his claims, to which the Court turns.

2008 WL 4180265, at **3-4.  The court in *Houle v. Riding*, No. Civ. F-07-1266, 2008 WL

223670, at *7 (E.D. Cal. Jan. 28, 2008) similarly held that "[a]lthough Plaintiffs bear the

burden of proving jurisdiction, they are not held to a heightened pleading standard and need

not prove every element of their claim to survive a jurisdictional challenge."[6]

---

[5]  Other cases finding subject-matter jurisdiction because the plaintiff had stated a claim upon which relief could be granted include *Palamarachouk v. Chertoff*, 568 F. Supp. 2d 460, 466-67 (D. Del. 2008); *Guellal v. Chertoff*, No. Civ. 08-164, 2008 WL 2778938, at *1 (W.D. Okla. July 14, 2008); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1134-36 (D. Ariz. 2008); *Burni v. Frazier*, 545 F. Supp. 2d 894, 902-06 (D. Minn. 2008); *Wang v. Chertoff*, No. Civ. 07-077, 2007 WL 4200672, at **2-4 (D. Ariz. Nov. 27, 2007); *Liu v. Chertoff*, No. Civ. 06-1682, 2007 WL 2435157 (D. Ore. Aug. 29, 2007).

[6]  Other name-check cases treat the issue of subject-matter jurisdiction as separate from the issue of whether the plaintiff has stated a claim, sometimes without explanation. *See, e.g.*, *Kim v. USCIS,* 551 F. Supp. 2d 1258, 1261 (D. Colo. 2008) (concluding that subject matter jurisdiction exists and reviewing Rule 12(b)(1) motion as Rule 12(b)(6) motion because "resolution of the jurisdictional question [wa]s intertwined with the merits of the case"); *Shah v. Hansen*, No. 1:07-cv-1576, 2007 WL 3232353, at *4 (N.D. Ohio Oct. 31, 2007); *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1167 (N.D. Cal. 2007); *Liu v. Novak*, 509

This distinction is well established.  "[T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946).  If, however, a claim is "wholly insubstantial and frivolous" it may be dismissed for lack of jurisdiction, as can claims that "clearly appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction . . . ." *Id*. at 682-83.  In the context of mandamus, the Seventh Circuit has explained the distinction between dismissals for failure to state a claim and dismissals for lack of subject-matter jurisdiction:

> [U]nless the claim is so frivolous that it fails the *Bell v. Hood* test, the district court has jurisdiction under [28 U.S.C.] § 1361 to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available. A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief.

*Ahmed v. Dep't of Homeland Sec.,* 328 F.3d 383, 386-87 (7th Cir. 2003).

Sawan alleges that the USCIS has a duty to adjudicate his naturalization application in a reasonable time.  He asks this court to order the USCIS and the FBI to perform their duty to complete the required background checks and to adjudicate his naturalization application. Sawan invokes the APA, which gives federal district courts authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  Although Sawan's

---

F. Supp. 2d 1, 8-9 (D.D.C. 2007).

claim may ultimately fail on the merits, it is not so insubstantial and frivolous as to defeat subject-matter jurisdiction.

On reconsideration, this court concludes that it has subject-matter jurisdiction to decide whether Sawan has the right to relief that he claims. Whether the USCIS has a clear duty to Sawan that is enforceable goes to the merits of his claims as opposed to the court's ability to consider those claims. *See Ali v. Frazier*, 2008 WL 4180265, at **2-4 (subject-matter jurisdiction exists over a similar claim that the USCIS has unreasonably delayed in deciding a naturalization application).

## III.   Whether Sawan Has Stated a Claim Upon Which Relief Can Be Granted

The defendants moved to dismiss for lack of jurisdiction under Rule 12(b)(1). Because this is a case in which the "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). "[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion . . . when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); *see also Linzay v. Nat'l Postal Mail Handlers Union Local 312*, No. Civ. A. 06-0061, 2006 WL

1675372, at *1 (W.D. La. June 16, 2006) (citing *Holt* and converting Rule 12(b)(1) motion

to Rule 12(b)(6) motion to analyze the defendants' argument that court lacked jurisdiction

because the plaintiffs had failed to state claim under the statute conferring jurisdiction).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true the

complaint's factual allegations and then determine whether the claim is "plausible." *Bell Atl.*

*Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1965 (2007). The plaintiff must provide

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do. Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even

if doubtful in fact)." *Id*. But even under this standard, "detailed factual allegations" are not

necessary to survive a motion to dismiss. *Id*. at 1964.

### A.    The Mandamus Act

A plaintiff such as Sawan who seeks relief for immigration delays under the

Mandamus Act and the APA must make essentially the same showing for both claims: that

there is "(1) a clear right to relief, (2) a clear duty by the respondent to do the act requested,

and (3) the lack of any other adequate remedy." *Davis v. Fechtel*, 150 F.3d at 587; *Yan v.*

*Mueller*, 2007 WL 1521732, at *8; *Dawoud v. Dep't of Homeland Sec.*, 2007 WL 4547863,

at *8. The duty Sawan is seeking to enforce through a mandamus writ is the USCIS's duty

of timely performance under the APA. Section 555(b) states, "[w]ith due regard for the

convenience and necessity of the parties or their representatives and within a reasonable time,

each agency shall proceed to conclude a matter presented to it." Section 706(1) requires

13

federal courts to compel "unreasonably delayed" agency action.  As a result, the mandamus claim adds nothing to the APA claim and should be dismissed.  *See Ali v. Frazier*, 2008 WL 4180265, at *5 ("Because in immigration-delay cases like this one, the duty to be enforced by way of mandamus is a duty of timeliness established by the APA, there is little reason to consider mandamus claims separately from claims under the APA.").  The APA provides a remedy for unlawfully delayed agency action; mandamus is not necessary for relief.

Sawan cannot state a claim for a writ of mandamus on which he may recover for an additional reason.  Mandamus is a cause of action of last resort.  Even if a plaintiff establishes that a defendant owes him a clear and enforceable duty, mandamus is available only if the plaintiff has no other remedy.  *See Cheney v. United States Dist. Ct. For Dist. of Columbia*, 542 U.S. 367, 380 (2004) ("[T]he party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires.") (quoting *Kerr v. United States Dist. Court for Northern Dist. of Cal.*, 426 U.S. 394, 403 (1976)); *U.S. v. Denson*, 603 F.2d 1143, 1148, n. 2 (5th Cir. 1979) ("It is fundamental that . . . a court will not issue a writ of mandamus unless no other remedy is available.").

Reconsideration of the dismissal of Sawan's mandamus claim is denied.

### B.    Sawan's APA Claims Against the FBI

Sawan has moved under the APA to compel the FBI to process his name check.  This claim fails as a matter of law because Sawan cannot show an essential element of his APA claim, that the FBI had a "clear duty . . . to do the act requested."  *Davis*, 150 F.3d at 587; *Yan v. Mueller*, 2007 WL 1521732, at *8; *Dawoud v. Dep't of Homeland Sec.*, 2007 WL

14

4547863, at *8.  No statute or regulation imposes a duty on the FBI to conduct name checks in connection with naturalization applications.  Although various statutes and regulations refer to the FBI's role in conducting name checks, the only mandatory language is directed toward the USCIS.  Under 8 C.F.R. § 335.2(b), the USCIS may interview an applicant "only after [it] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b) (emphasis added).  The 1998 Appropriations Act prohibits the USCIS from adjudicating immigrants' applications for naturalization until FBI background checks are completed: "[N]one of the funds appropriated or otherwise made available to [the USCIS] shall be used to complete adjudication of an application for naturalization unless [the USCIS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed."  The FBI is authorized by statute to collect fees for conducting name checks on another agency's behalf,[7] and the USCIS pays the FBI for name checks out of the fees the USCIS collects from applicants.[8]  But none of these provisions directs the FBI to conduct name checks and none imposes a time limit on the FBI for doing so.

---

[7] *See* Act of Nov. 5, 1990, Pub.L. No. 101-515, 104 Stat. 2101, 2112 ("[F]or fiscal year 1991 and hereafter the Director of the [FBI] may establish and collect fees to process fingerprint identification records and name checks for non-criminal justice, non-law enforcement employment and licensing purposes . . . .").

[8] *See* Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule (Proposed Rule), 72 Fed. Reg. 4888, 4899 (Feb. 1, 2007) ("USCIS pays the FBI for fingerprint and name checks performed on certain immigration and naturalization benefit applications.").

15

In *Ali v. Frazier*, the court collected the cases and analyzed the divisions among the federal district courts as to whether "this statutory and regulatory scheme imposes on the FBI a duty, owed to immigrants and enforceable under the APA, to conduct timely name checks." 2008 WL 4180265 at *6.  The court noted that "[w]hen name-check cases first began to proliferate, the clear trend among district courts was to find no such enforceable duty, and many courts still take this approach. *Id.* (collecting cases).[9]  But it observed that "[t]he trend

―――――――――――

[9] Cases finding no enforceable duty against the FBI include *Wang v. Gonzales*, No. 07-02272, 2008 WL 45492, at *3 (D. Kan. Jan. 2, 2008); *Ibrahim v. Chertoff*, 529 F. Supp. 2d 611, 614 (E.D.N.C. 2007); *Mitova v. Chertoff*, No. 07-2631, 2007 WL 4373045, at *6 (E.D. Pa. Dec. 13, 2007); *Costa v. Chertoff*, No. 07-2467, 2007 WL 4456218, at *1 (E.D. Pa. Dec. 11, 2007); *Zhu v. Chertoff*, 525 F. Supp. 2d 1098, 1102 (W.D. Mo. 2007) (holding that "the Court cannot directly compel the FBI to perform name checks"); *Sinha v. Upchurch*, No. 1:07 CV 2274, 2007 WL 4322225, at **4-5 (N.D. Ohio Dec. 7, 2007); *Dairi v. Chertoff*, No. 07CV1014, 2007 WL 3232503, at *1 (S.D. Cal. Nov. 1, 2007); *Azadegan v. Chertoff*, No. 07-CV-11238, 2007 WL 2822783, at *7 n. 2 (E.D. Mich. Sept. 27, 2007); *Antonishin v. Keisler*, No. 06 CV 2518, 2007 WL 2788841, at **6-7 (N.D. Ill. Sept. 20, 2007); *Omar v. Mueller*, 501 F. Supp. 2d 636, 640 (D.N.J.2007); *Eldeeb v. Chertoff*, No. 8:07-CV-236, 2007 WL 2209231, at *22 (M.D. Fla. July 30, 2007); *Konchitsky v. Chertoff*, No. C-07-00294, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at **7-9 (S.D. Tex. May 24, 2007); *Sozanski v. Chertoff*, No. 3:06-CV-0993, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006); *Shalabi v. Gonzales*, No. 4:06CV866, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006); *Zaytsev v. Gantner*, No. 04 Civ. 7101, 2004 WL 2251665, at *1 (S.D.N.Y. Sept. 24, 2004).  Some of these cases deny relief against the FBI on jurisdictional grounds while others do so on the merits; some consider the Mandamus Act while others look at the APA. But they all reach the same result and hold that federal courts cannot order the FBI to act more quickly on name-check requests.

in recent cases, however, seems to be shifting in the other direction." *Id.* (collecting cases).[10]

The court summarized:

> District courts are divided because any enforceable duty on the
> FBI's part to do timely name checks arises only by implication,
> and there is no clear authority on whether such implicit duties
> can be enforced under the APA. Congress has used the power
> of the purse to prevent [USCIS] from processing immigrants'
> applications until FBI name checks are complete. In doing so,
> Congress has legislated consistently with 8 C.F.R. § 335.2(b),
> which requires [USCIS] to wait on those name checks before
> interviewing applicants and adjudicating their applications. . . .
> Congress obviously assumed that the FBI would conduct name
> checks, but Congress *did not direct the FBI to do so*.

2008 WL 4180265 at *7 (emphasis added).

---

[10] Other cases have found that the FBI does have an enforceable duty. *See Dawoud v. Dep't of Homeland Sec.*, No. 3:06-CV-1730, 2007 WL 4547863, at **6-7 (N.D. Tex. Dec. 26, 2007); *Moretzapour v. Chertoff*, No. C 07-4264, 2007 WL 4287363, at *1 (N.D. Cal. Dec. 5, 2007) ("[T]he FBI has a mandatory duty to complete its background check within a reasonable time even though that duty is not expressly stated in a statute."); *Khdir v. Gonzales*, No. 07-CV-00908, 2007 WL 3308001, at *6 (D. Colo. Nov. 6, 2007); *Assadzadeh v. Mueller*, No. 07-2676, 2007 WL 3252771, *5 (E.D. Pa. Oct. 31, 2007); *Ajmal v. Mueller*, No. 07-206, 2007 WL 2071873, at *2 (E.D. Pa. July 17, 2007); *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400-01 (E.D. Pa. 2007). These cases decided that the FBI had an enforceable duty under either the Mandamus Act or the APA to conduct timely name checks.

In yet other immigration-delay cases, courts have not expressly addressed the nature of the FBI's duty but have nonetheless allowed plaintiffs to proceed against the FBI. *See, e.g., Sawad v. Frazier*, No. 07-1721, 2007 WL 2973833 (D. Minn. Oct. 9, 2007); *Alkeylani v. Dep't of Homeland Sec.*, No. 3:07-CV-504, 514 F. Supp. 2d 258 (D. Conn. 2007); *Bondarenko v. Chertoff*, No. 07-MC-00002, 2007 WL 2693642 (W.D.N.Y. Sept. 11, 2007); *Elhaouat v. Mueller*, No. 07-632, 2007 WL 2332488 (E.D. Pa. Aug. 9, 2007); *Alhamedi v. Gonzales*, No. 07 Civ. 2541, 2007 WL 1573935 (S.D.N.Y. May 30, 2007); *Alhassan v. Gonzales*, No. 06-CV-0157, 2007 WL 1455841 (D. Colo. May 16, 2007); *Mahd v. Chertoff*, No. 06-CV-01023, 2007 WL 891867 (D. Colo. March 22,2007); *Gelfer v. Chertoff*, No. C 06-6724, 2007 WL 902382 (N.D. Cal. Mar. 22, 2007); *Kherriden v. Chertoff*, No. 06-4792, 2007 WL 674707 (D.N.J. Feb. 28, 2007); *Lazli v. USCIS*, No. 05-CV-1680, 2007 WL 496351 (D. Or. Feb. 12, 2007); *Ahmed v. Chertoff*, No. H-06-MC-0417, 2006 WL 3771814 (S.D. Tex. Dec. 15, 2006).

The court in *Ali v. Frazier* concluded that the FBI has no duty to perform name checks that is enforceable under the APA, relying on *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55 (2004).  In *SUWA*, the Court held that APA claims under 5 U.S.C. § 706(1) for unlawfully withheld or unreasonably delayed action "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Id*. at 64.  Under this approach, an FBI name check may be a "discrete" action, but it is not "required" because it is not "demanded by law."

In *SUWA*, the Supreme Court explained that "[t]he limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)."  *Id*. at 65.  In applying this standard, *SUWA* held that assertions in a land-use plan that the Bureau of Land Management "will" take certain actions "are not a legally binding commitment enforceable under § 706(1)."  *Id*. at 72.  In *Ali v. Frazier*, the court applied these statements in *SUWA* to the FBI's role in name check requests:

> From these two statements in *SUWA*, we know two things: First, action "demanded by law" is "required" and therefore enforceable under § 706(1).  Second, suits under § 706(1) can be brought to enforce an agency's "legally binding commitment" to take action.
>
> There is no evidence that the FBI has itself made a "legally binding commitment" to do name checks, whether by adopting regulations requiring that it do so or otherwise. The Court further finds that the FBI is not "demanded by law" to conduct name checks. The word "demand" connotes an explicit command, not an implicit one. And no statute "demands" that the FBI conduct name checks. . . .

18

> Put another way, § 335.2(b) forbids [USCIS] to do certain things (conduct interviews before receiving name-check results from the FBI), but it neither forbids nor requires the FBI to do anything. Because this Court reads *SUWA* as holding that implicit duties are not enforceable under the APA, this Court dismisses Al-Selham's APA claims against the FBI for failure to state a claim.

2008 WL 4180265 at *8.

Because the FBI is not "demanded by law" to conduct name checks for naturalization applications, Sawan's APA claims against the FBI cannot proceed.  Reconsideration of dismissal of Sawan's claims against the FBI is denied.

### C.    Sawan's APA Claims Against the USCIS

In contrast to the FBI, the USCIS has express statutory and regulatory duties to process naturalization applications.  Title 8 U.S.C. § 1446(d) states that the USCIS "shall make a determination as to whether the application should be granted or denied, with reasons therefor."  Title 8 C.F.R. § 316.14(b)(1) states that the USCIS "shall determine whether to grant or deny the application, and shall provide reasons for the determination, as required under Section 335(d) of the [Immigration and Naturalization] Act."  And 8 C.F.R. 335.3(a) states that the USCIS "shall grant the application [for naturalization] if the applicant has complied with all requirements for naturalization under this chapter."  Under the APA, the USCIS is required to do so "within a reasonable time," "with due regard for the convenience and necessity of the parties or their representatives."  5 U.S.C. § 555(b).  The courts have authority to "compel action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see also Costa v. Chertoff*, No. 07-2467, 2007 WL 4456218, at *4 (E.D. Pa. Dec. 11,

2007); *Sawad v. Frazier*, No. 07-1721, 2007 WL 2973833, at **3-4 (D. Minn. Oct. 9, 2007) (holding that the USCIS must adjudicate adjustment-of-status applications within a reasonable time).

Sawan's right to relief depends on whether the USCIS's delay in processing Sawan's application has been "unlawfully withheld or unreasonably delayed."  The parties do not dispute that Sawan's application has not been processed because the USCIS is waiting for the FBI to complete Sawan's name check.  The defendants argue that because the USCIS cannot schedule an interview with Sawan until the results of his name check are received, there is "no non-discretionary duty to immediately process [Sawan's] naturalization application prior to the favorable completion of [the name] checks, and in fact [USCIS] is statutorily precluded from doing so."  (Docket Entry No. 9 at 6).  The defendants also argue that "[t]here is no applicable time frame which [Sawan] can identify that requires USCIS to act on his application for naturalization."  (Docket Entry No. 14 at 3).  The defendants cite the Fifth Circuit's opinion in *Walji v. Gonzales* to show that "there is currently no required period of time" for the USCIS to process a naturalization application, provided that the interview has not been scheduled.  500 F.3d at 439.

*Walji* is distinguishable.  In that case, the plaintiff moved under 8 U.S.C. § 1447(b) to compel action on a naturalization application that was stalled at the name-check phase. The plaintiff in that case, unlike Sawan, had been interviewed by the USCIS before the name-check results were received.  The USCIS did not decide the application within 120 days of the interview, as § 1447(b) requires.  The issue in that case arose because the USCIS

20

had not waited for the results of the name check before scheduling the interview, as 8 C.F.R. § 335.2(b) requires and as has been done in this case.  Section 1447(b) applied in *Walji*, but does not apply here.

In *Walji*, the Fifth Circuit remanded to the district court to compel the USCIS to act on the application.  In *dicta*, the Fifth Circuit added that the § 1447(b) action would not have been successful had the USCIS complied with the regulations and waited for the name check to be completed before scheduling the interview, because the 120-day deadline in § 1447(b) begins to run after the interview.  *Id*.  But the court in *Walji* did not need to and did not consider whether a statute or regulation other than § 1447(b) limited the time that USCIS may take to adjudicate a naturalization application.

Sawan has not moved under § 1447(b) for adjudication of his application.  Rather, he argues that adjudication has been "unreasonably delayed," in violation of 5 U.S.C. §§ 555(b) and 706(1), and that this delay is not reasonable merely because the USCIS is waiting on a mandatory FBI name check.  Sawan argues that although there is no explicit statutory or regulatory time limit for processing naturalization applications, 8 C.F.R. § 103.2(b)(18) creates a presumption of unreasonableness for a two-year delay.  Section 103.2(b)(18) states that the USCIS may withhold adjudication of an immigration-related application "if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion."  *Id*.

If the investigation at issue "has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition

or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner." *Id*. If six months later the investigation still is not complete, the district director must revisit the matter and determine whether an additional six-month abeyance is warranted. Additional abeyances are available but only if approved by higher officials at the USCIS and only in six-month intervals. *Id*. Sawan asserts – and the defendants do not deny – that the USCIS has not followed this procedure and obtained the requisite approvals in Sawan's case. Sawan argues that under § 103.2(b)(18), the USCIS does not have unlimited time to process naturalization applications, particularly if the necessary authorizations for extending the time are not obtained. He urges that this court consider the USCIS's failure to act within the time limits of § 103.2(b)(18) as one factor in assessing the reasonableness of the USCIS's delay.

There is some authority to support this argument. In *Sherdil v. Chertoff*, No. Civ. 07-629, 2007 WL 4564111, at *2 (D. Ariz. Dec. 20, 2007), for example, the court concluded that § 103.2(b)(18) "sets forth a specific framework for both the timing and manner of withholding adjudication of adjustment of status applications. Where the allegation is that the [USCIS] has acted inconsistently with 103.2(b)(18), the Court . . . may compel action under § 706(1) of the APA." The court in *Wang v. Chertoff*, No. Civ. 07-077, 2007 WL 4200672, at *2 (D. Ariz. Nov. 27, 2007), similarly concluded that § 103.2(b)(18) puts a boundary on the time for adjudication, concluding that if the USCIS's time for decision was unlimited, "there would be no need for a specific regulation allowing the government to temporarily withhold adjudication while sensitive investigations are allowed to proceed."

22

The district court in *Zhou v. FBI*, No. 07-cv-238, 2008 WL 2413896, at **5-6 (D.N.H. June 12, 2008), found that § 103.2(b)(18) limits the time for adjudication but concluded that under the regulation, "a delay of two years or less is unlikely to be *per se* unreasonable."

Title 8 C.F.R. § 103.2(b)(18) is not the only provision setting times for adjudicating naturalization applications.  Aspirational language about timing is contained in 8 U.S.C. § 1571, which states that the USCIS is to "eliminate the current backlog in the processing of immigration benefit applications . . . and to maintain the elimination of the backlog in future years."  *Id*. § 1571(a)(1).  This statute contains the "policy" statement that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  *Id*. § 1571(b).  Although courts agree that the 180 days is an aspirational, not mandatory, time limit, some courts have considered § 1571(b) as a factor in assessing the reasonableness of delay.  *See, e.g., Rajput v. Mukasey*, No C-07-1029, 2008 WL 2519919, at *5 (W.D. Wash. June 20, 2008) (characterizing § 1571(b) as useful in assessing the reasonableness of delay); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1144 (D. Ariz. 2008); *Karimushan v. Chertoff*, 2008 WL 2405729, at *4 (E.D. Pa. June 11, 2008); *Kousar v. Mueller*, 549 F. Supp. 2d 1194, 1198 (N.D. Cal. 2008).

Both 8 C.F.R. 103.2(b)(18) and 8 U.S.C. § 1571(b) are relevant to the second factor of a six-factor test adopted in many circuits for assessing whether an agency's action has been "unreasonably delayed" under §§ 555(b) and 706(1) of the APA.  This test, first

articulated in *Telecommunications Research and Action Center v. F.C.C.* ("*TRAC*"), 750

F.2d 70, 80 (D.C. Cir. 1984), requires a court to consider:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by delay[;] and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80 (internal citations and quotations omitted); *see also Nat'l Grain & Feed Ass'n, Inc.*

*v. Occupational Safety and Health Admin.*, 903 F.2d 308, 310 (5th Cir. 1990) (adopting

*TRAC* factors); *Rajput v. Mukasey*, 2008 WL 2519919, at *5 (applying *TRAC* factors in

name-check litigation); *Kashkool v. Chertoff*, 553 F. Supp. 2d at 1144 (same).

In *Ali v. Frazier*, 2008 WL 4180265, at *9, the court noted that one important element

to consider in assessing the reasonableness of the USCIS's delay in adjudicating an

application is whether the USCIS has attempted to accelerate the process by asking the FBI

to expedite the name check.  The court in *Ali* concluded that the reasonableness of the

USCIS's delay could "turn[] on the reasonableness of [its] decision" about whether to request

an expedited name check.  *Id*.  In *Ali*, the USCIS had not requested an expedited name check

and had not submitted evidence about its criteria for determining when it would do so.  The

court concluded that the plaintiff had stated a claim under the APA.  *Id*. at *10.  In the

present case, unlike *Ali*, the defendants have submitted evidence as to the criteria used for asking the FBI for expedition in completing a name-check request.  The declaration of Joyce A. Brown, Supervisory Center Adjudications Officer at the Texas Service Center of USCIS, states:

> In order to address delays in a consistent and fair manner, USCIS issued specific guidelines for requesting an expedited name check from the FBI.  Expedited processing may be pursued in the following situations:  Military Deployment; Age-out cases not covered by the Child Status Protection Act; applications affected by sunset provisions such as the Diversity Visa Program; compelling reasons provided by the requesting office (the Center) for reasons such as critical medical conditions, loss of Social Security benefits (or other subsistence) and at the discretion of the Director.

(Docket Entry No. 9, Brown Decl. ¶ 22).  The defendants also state in their opposition to reconsideration that the "USCIS has requested that the FBI report [on Sawan] be expedited." (Docket Entry No. 14 at 3).

Both sides have asked this court to consider evidence outside the pleadings.  This evidence is neither referenced in the complaint nor a matter of public record that may be judicially noticed.  Although a court may consider these materials in deciding a motion to dismiss under Rule 12(b)(1), under Rule 12(b)(6), the motion is converted into one for summary judgment under Rule 56.  *See Isquith v. Middle S. Utils., Inc*., 847 F.2d 186, 193 n. 3 (5th Cir. 1988) (quoting 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1366 (1969)).  The court must give the parties notice of the changed status of the motion and allow a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  *Festa v. Local 3 Int'l Bhd. of Elec. Workers*,

25

905 F.2d 35, 38 (2d Cir. 1990) (vacated on other grounds).  Because both sides have submitted materials outside the pleadings bearing on the reasonableness of the delay in deciding Sawan's naturalization application, the motion to dismiss will be treated as one for summary judgment.  The defendants may supplement the record and briefing no later than December 1, 2008.  Sawan may respond and supplement the record and briefing no later than December 15, 2008.  The additional briefing should address the application of 8 C.F.R. § 103.2(b)(18), 8 U.S.C. § 1571(b), and the *TRAC* factors to assessing whether the USCIS's delay in processing Sawan's naturalization application is reasonable as a matter of law.

**IV.   Sawan's Argument that the Name-Check Requirement is Invalid**

Sawan also argues that this court failed to address his argument that no statute or regulation specifically requires the USCIS to require an FBI name check for naturalization applications and that the requirement is an *ultra vires* act by the USCIS.  Sawan cites a recent opinion from the Court of Appeals for the First Circuit.  In *Aronov v. Chertoff*, 536 F.3d 30 (1st Cir. 2008), the court analyzed the plaintiff's request for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, after the government had agreed with the plaintiff to remand the case to the USCIS to adjudicate the naturalization application.  The government argued that because its litigation position had been "substantially justified," it should not have to pay attorney's fees under § 2412(d)(1)(A).  The government argued that its initial refusal to compel the USCIS to decide the naturalization application was substantially justified because the USCIS was required by 8 U.S.C. § 1446(a) and the 1998 Appropriations Act first to obtain a completed name check from the FBI.  The government

argued in the alternative that the USCIS's conclusion that FBI name checks are "essential" to applicants' background investigations was entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984). *Id*. at 41-45. The First Circuit held that because the plaintiff had been interviewed before the name check was completed, 8 U.S.C. § 1447(b) applied and the USCIS had to adjudicate the naturalization application within 120 days of the interview. *Id*. at 46-47. The court did not reach the issue of whether the USCIS was entitled to *Chevron* deference for its policy of requiring FBI name checks as part of the background investigation that had to be completed before a naturalization application could be decided.

In *Aronov*, unlike the present case, the USCIS had deviated from its own regulations and had interviewed the applicant before receiving the results of the name check from the FBI. That interview triggered 8 U.S.C. § 1447(b) and 8 C.F.R. § 335.3(a), which gave the district court jurisdiction to evaluate the naturalization application if the agency failed to adjudicate it within 120 days after conducting the initial examination. The court in *Aronov* acknowledged that the USCIS "has valid – indeed persuasive – reasons for requiring comprehensive FBI name checks under ordinary circumstances." The court concluded that the USCIS's "policy determination cannot justify the failure to comply with a statutory deadline." *Id.* at 47. Importantly, the court also noted that "the ultimate cause of the agency's failure to comply with the law was its own non-compliance with its regulations. If the agency had properly deferred conducting its initial interview of Aronov until the FBI name check process had been completed, the statutory obligation would not have arisen."

27

*Id.* at 47-48.  In the present case, unlike *Aronov,* the USCIS has waited to interview Sawan until the FBI name check is completed.  The timing obligation imposed by § 1447(b) has not been triggered.[11]  *Aronov* does not require the reconsideration Sawan seeks.

Sawan has also cited one district court case, *Mocanu v. Mueller*, No. Civ. 07-0445, 2008 WL 372459, at *10 (E.D. Pa. Feb. 8, 2008), which concludes that the USCIS's name-check requirement exceeds the agency's rulemaking authority to implement 8 U.S.C. § 1446(a) and the 1998 Appropriations Act and exceeds the scope of 8 C.F.R. § 335.2 as approved in 1998.  The court in *Mocanu* observed that the relevant statutes and regulations did not refer to a "name check," despite the fact that the term is one of art with the FBI.  The court further observed that USCIS did not require name checks under § 335.2 when the regulation was first promulgated in 1998, but rather began to require them in November 2002 in response to heightened national security concerns.  The *Mocanu* court concluded that

---

[11] The court in *Aronov* did acknowledge what it called an "oddity" resulting from the regulations, reflected in the difference between that case and this:

> [I]f USCIS had complied with its regulations and waited to interview Aronov until the FBI name check had been completed, his waiting time for the completion of the naturalization process might have been longer than it was here.  However, this fact does not alter our legal analysis.  Once USCIS gave Aronov his initial interview, it had to confront the clear timing obligation imposed by Congress.

*Id.* at 48 n.18.  In the present case, Sawan cannot rely on the statutory deadline imposed in 8 U.S.C. § 1447(b) and 8 C.F.R. § 335.3(a).  Although he has waited as least as long as the plaintiff in *Aronov*, Sawan must challenge the delay on a different basis than did the plaintiff in *Aronov*.

"there is no support that the current USCIS practice of securing an FBI name check as a

prerequisite [for naturalization] . . . is authorized by statute or regulation."  *Id*. at *8.

The decision in *Mocanu*, however, runs contrary to many cases holding that name

checks "are well within the authority Congress granted USCIS and the regulations

interpreting such authorization."  *Gadi v. Chertoff*, No. Civ. 07-0090, 2007 WL 1140825, at

*3 (E.D. Cal. Apr. 17, 2007).  In these cases, the courts hold that the name-check requirement

is a reasonable interpretation of the "full criminal background check" required for

naturalization by statute and regulation and that this interpretation is entitled to *Chevron*

deference.  As one court stated:

> Defendants contend that the [requirement of a name check] only
> modified their construction of the term "full criminal
> background check," as used in 8 C.F.R. 335.  They also argue
> that they expanded the scope of the search in response to
> concerns about terrorist attacks.  The addition of the FBI name
> check is merely one in a long line of adjustments to the
> investigation process . . . .  Here, the [USCIS] was merely
> interpreting the scope of the FBI [criminal background] check.
> It did not actually add anything to the process except to require
> a more expansive search.

*Ahmadi v. Chertoff,* 2007 WL 3022573, at *8; *see also Antonishin v. Keisler*, No. 06-cv-

2578, 2007 WL 2788841, at *8 (N.D. Ill. Sept. 20, 2007) ("It is apparent . . . that USCIS was

interpreting the scope of the 'full criminal background check.'  It did not create a new law,

right or duty."); *Mohammed v. Keisler*, 558 F. Supp. 2d 730, 731 n. 1 (W.D. Ky. 2008)

("[T]he FBI name check is properly included as a component of the 'full criminal

background check.'"); *Hani v. Gonzales*, 2008 WL 2026092, at *5 (W.D. Ky. May 8, 2008)

(same); *Aman v. Gonzales*, No. 07-cv-00223, 2007 WL 2694820, at *3 (D. Colo. Sept. 10,

29

2007) (same); *Stepchuk v. Gonzales*, No. C-06-570, 2007 WL 185013, at *2 (W.D. Wash. Jan. 18, 2007) (same).

Sawan's motion for reconsideration on the validity of the name-check requirement is denied.

## V.    Conclusion

Sawan's motion for reconsideration of the dismissal based on lack of subject-matter jurisdiction is granted.  Sawan's motion for reconsideration of the dismissal of his mandamus claim is denied.  Sawan's motion for reconsideration of the dismissal of his APA claim against the FBI is denied.  Sawan's motion for reconsideration of the dismissal of his APA claim against the USCIS is granted.  The defendants' motion to dismiss this claim is converted to a motion for summary judgment and the parties are to submit any additional evidence and briefing within the schedule set out above.  Sawan's motion for reconsideration of the dismissal of his claim that the USCIS's name-check requirement is invalid is denied.

SIGNED on November 18, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

30